IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**Miya Perez and Gabriel Alexander Perez,**
**infants and minor children, by their guardian**
**and parent, CRYSTAL HAYES, and**
**TERESA REYES, individually and**
**as Personal Representative of the**
**Estate of Paul Aaron Perez, Deceased,**

       **Plaintiffs,**

vs.                                                                                              No. CIV 02-1355 RB/LAM

**JIMMY A. GARCIA, Deputy Sheriff for**
**Luna County, New Mexico, and BOARD**
**OF COUNTY COMMISSIONERS OF THE**
**COUNTY OF LUNA, NEW MEXICO,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion for Summary Judgment (Doc. 25), filed on April 22, 2003, and Defendants' Motion to Strike Expert and Expert's Affidavit (Doc. 47), filed June 6, 2003. Jurisdiction arises under 28 U.S.C. §§ 1331., 1343(a)(3) and 1367. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion to strike is well-taken and should be granted and that the motion for summary judgment is well-taken in part and should be granted and denied in part.

**I.     Background.**

Plaintiffs filed their Complaint on October 25, 2002, seeking damages and attorney fees under 42 U.S.C. §§1983 and 1988 for deprivation of Paul Aaron Perez's due process and equal protection rights under the United States Constitution (Count I), and supplemental claims under the New

Mexico Tort Claims Act and Article II, Section 4 of the New Mexico Constitution (Count II). Paul Aaron Perez (hereinafter "Perez") was seventeen years old on the night that he died. Crystal Hayes is the mother of Perez's children, Miya Perez and Gabriel Alexander Perez. Teresa Reyes is the mother and personal representative of Perez.

**II.     Facts.**

On June 8, 2001, sometime after 2:00 a.m., Perez was left on Hermanas Road south of Deming, New Mexico by Jeffrey Gray, the father of a friend. (Compl. ¶¶ 8 and 10; Garcia Affidavit, Defs. Ex. B.) At about 2:30 a.m., Mr. Gray had learned that his son Justin had been driving around Deming with Perez and Tayna Nieblas. (Pl. Ex. 4.) All three were juveniles and had been drinking. (*Id.*) Mr. Gray drove Nieblas home and then offered to drive Perez home. (*Id.*) Perez directed Mr. Gray to drop him off at a mobile home on Hermanas Road, near the intersection of Adobe Road. (Defs. Ex. A.) Mr. Gray observed Perez walk toward the mobile home, but did not see him go inside. (Pl. Ex. 4.) It was later learned that Galen McGuire, the occupant of the mobile home, did not know Perez. (Pl. Ex. 5.) After Mr. Gray left, the inebriated Perez apparently passed out on the traveled portion of the roadway. (Compl. ¶ 11; Pl. Ex. 4.) Perez was wearing a white cap, white socks, gray tank top, jeans and white tennis shoes. (*Id.*) The road was paved, straight and level. (Pretrial Order ¶ 3(d).) The conditions were clear and dry. (*Id.*; Pl. Ex. 3.)

While on patrol in the course and scope of his duties, Defendant Garcia drove a 2001 Chevrolet Tahoe utility truck owned by Luna County north bound on Hermanas Road at about 2:00 a.m. on June 8, 2001. (Compl. ¶ 9.) Garcia was not responding to a call, but was on general patrol duty. (Pl. Exs. 1 and 2.) He was traveling at about 45 to 55 miles per hour. (Pl. Ex. 2.) Garcia attests that he fell asleep at the wheel and was awakened by a bump. (Pretrial Order ¶¶ 3 (l-m); Def.

Ex. B.) Garcia thought he had run over a rabbit and proceeded with his duties. (Def. Ex. B.) Garcia did not stop to ascertain what he had run over and did not promptly report the incident. (Pretrial Order ¶¶ 3 (o-p).) After the bump incident, Garcia went home for his lunch break and to lie down. (Pl. Ex. 1.)

Concerned about Perez, Mr. Gray and his wife Kim Gray returned to Hermanas Road and found Perez injured and bleeding on the roadway. (Compl. ¶ 20.) At 3:43 a.m., Mrs. Gray called 911 from the McGuire mobile home. (Def. Ex. B; Pl. Ex. 4.) Emergency personnel, including Garcia, responded. (*Id.*; Pl. Ex. 2.) Officer Russell Bullington of the New Mexico State Police was dispatched to the scene at 3:49 a.m.. (Pl. Ex. 3.) Garcia realized that he might have run over Perez. (Def. Ex. B; Pl. Ex. 2.) Mr. McGuire overheard a deputy stating that he was going to "call it in." (Pl. Exs. 4 and 7.) Mr. McGuire stated that he heard a car turn around on Adobe Road at about 3:00 a.m. (Pl. Ex. 4.) About fifteen to twenty minutes later, he heard another vehicle drive north on Hermanas Road at a high rate a speed. (*Id.*) Approximately fifteen minutes after that, Mr. and Mrs. Gray arrived at Mr. McGuire's residence and called 911. (*Id.*)

Garcia admits that he was awakened by a bump, knew that he had hit something, decided not to look at what his vehicle had rolled over and did not stop his vehicle. (Pl. Ex. 9.) Garcia admits that he got scared when he realized that he had fallen asleep at the wheel. (*Id.*; Pl. Ex. 3.) Garcia told an investigating officer that he thought he had hit a rabbit. (Def. Ex. A at 53-54.) Garcia states in his affidavit that he thought he hit a rabbit or "another type of animal" and did not know that he struck a person. (Def. Ex. B ¶ 4; Pl. Ex. 10.) Garcia gave a statement to New Mexico State Police Officer Russell Bullington on June 8, 2001 in which he failed to mention that he had fallen asleep at the wheel. (Pl. Exs. 1 and 2.) Before June 8, 2001, Garcia had fallen asleep while driving. (Pl. Ex.

3

1.) Blood was splattered on the passenger side wheel wells of the Sheriff's Department vehicle driven by Garcia. (Pl. Exs. 1 and 2.)

Perez was transported to Mimbres Memorial Hospital and underwent emergency surgery. (Compl. ¶ 20.) He was pronounced dead at 7:58 a.m. on June 8, 2001. (Pretrial Order ¶ 3(s).) The Office of the Medical Investigator determined that Perez died of blunt force injuries after he was run over by Garcia's vehicle. (Pretrial Order ¶ 3 (t).)

### III. Motion to Strike.

Defendants move to strike the opinion of Corinne E. Stern, D.O. on the grounds that Plaintiffs failed to meet the expert witness disclosure deadline imposed by the Initial Pretrial Report and failed to comply with FED. R. CIV. P. 26(a)(2)(B). The deadline for Plaintiff to disclose expert witnesses and provide the necessary reports was March 31, 2003. (Doc. 18.) Plaintiffs did not disclose Dr. Stern as an expert witness or provide a copy of her report before the deadline. On May 16, 2003, Plaintiff attached a copy of a letter from Dr. Stern containing her medical opinion to their response to Defendants' motion for summary judgment. (Pl. Ex. 6.)

Dr. Stern is a forensic pathologist based in El Paso, Texas who reviewed Perez's medical records, autopsy report and the Complaint. (Pl. Ex. 6.) Based on her review of these documents, Dr. Stern opined that if Perez had prompt medical care he would not have died of his abdominal injuries. (*Id.*) Dr. Stern assumed that Perez had been run over at 2:00 a.m. and arrived at the hospital at 4:20 a.m. (Id.) She believed that a significant amount of time elapsed while Perez was left on the road unattended. (*Id.*) Dr. Stern conceded that Perez suffered from multiple head injuries in addition to his abdominal injuries and recommended that a neurosurgeon evaluate the records to determine whether Perez could have survived his head injuries. (*Id.*)

4

Plaintiffs admit that they failed to disclose Dr. Stern as a expert witness and failed to comply with Rule 26(a)(2)(B). Plaintiffs maintain that Dr. Stern is a lay witness. However, Plaintiffs admit that Dr. Stern did not conduct the autopsy and that they consulted her for her opinion on whether a delay in medical attention contributed to the cause of death. Plaintiffs rely on Dr. Stern as an expert witness, yet they failed to comply with March 31, 2003 deadline or Rule 26(a)(2)(B). Under these circumstances, Defendants' motion to strike should be granted.

**IV.     Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (*quoting* Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary

judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995).

**V.     Analysis.**

**A.     Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Substantive Due Process Claims.**

Defendants assert that Plaintiffs cannot satisfy the requirements for a substantive due process claim as a matter of law. The test for establishing a substantive due process challenge to state action

"is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847-48 n.8 (1998). "[L]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold." *Lewis*, 523 U.S. at 849; *see also Ruiz v. McDonnnell*, 299 F.3d 1173, 1185 (10th Cir. 2002). In order to satisfy the "shock the conscience" standard, the plaintiff must demonstrate a degree of "outrageousness and magnitude of potential or actual harm that is truly conscience shocking." *Ulhrig v. Harder*, 64 F.3d 567,574 (10th Cir. 1995).

In addition to claiming that the act of running Perez over shocks the conscience, Plaintiffs advance a substantive due process "danger creation" theory in the Complaint. Specifically, they allege that Defendants are also liable because Garcia left Perez on the roadway after running him over. (Compl. ¶¶ 19-20.) Under the "danger creation" theory, a state may be liable when it takes affirmative action which creates or increases the danger to a decedent or plaintiff. *Gonzales v. City of Castle Rock,* 307 F.3d 1258, 1262-63 (10th Cir. 2002). In order to prove a danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased the decedent's vulnerability to the danger in some way; (2) the decedent was a member of a limited and specifically definable group; (3) defendant's conduct put the decedent at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking. *Id*. (citing *Currier v. Doran,* 242 F.3d 905, 918 (10th Cir. 2001)).

Defendant Garcia admits that he was startled by the combination of having fallen asleep at the wheel and having struck an unknown object. Garcia assumed that he had run over a rabbit "or some other animal." Garcia chose to presume, with reckless disregard of the consequences, a harmless

result of the collision rather than to stop and investigate. While Garcia's choice may not rise to the level of outrageous conduct, it was irresponsibly indifferent to the consequences, especially for an officer who presumably is trained to investigate accidents.

Garcia's inconsistent accounts of the incident are especially troubling. When he gave his statement to Officer Bullington, Garcia did not mention that he had fallen asleep at the wheel. Additionally, Garcia did not tell the officers at the scene that he had hit something at that location because he was scared. The facts are in dispute as to how long Perez was left on the road. When construed in the light most favorable to Plaintiffs' the facts of record could allow a reasonable jury to find in favor of Plaintiffs on the federal substantive due process claims. Under these circumstances, Defendants' motion for summary judgment as to the due process claims should be denied.

**B.    Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Equal Protection Claim.**

Plaintiffs alleged an equal protection claim in the Complaint. However, they abandoned this claim because they do not mention it in the Initial Pretrial Report or the Pretrial Order. In any event, in order to sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose. *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). Plaintiffs have failed to allege or establish either element as to Perez. Therefore, Defendants are entitled to summary judgment on Plaintiffs' equal protection claim.

**C.    Whether Defendants are entitled to summary judgment on Plaintiff's State Constitutional Claim.**

Plaintiffs allege a claim under Article II, Section 4 of the New Mexico Constitution. This

Section provides "[a]ll persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." N.M.CONST. Art. II, Sec. 4.

Defendants argue that the New Mexico Tort Claims Act does not waive sovereign immunity with respect to the state constitutional claim. Defendants are correct. *Blea v. City of Española*, 117 N.M. 217, 221, 870 P.2d 755, 759 (Ct. App. 1994); *Caillouette v. Hercules, Inc.*, 113 N.M. 492, 497, 827 P.2d 1306, 1311 (Ct. App. 1992).

Plaintiffs do not dispute that the state constitutional claim is barred, but they do point out that the New Mexico Tort Claims Act waives immunity for automobile negligence. *See* NMSA 1978, § 41-4-5. A law enforcement officer, being a public employee, can be sued for negligent conduct in the operation or maintenance of any motor vehicle under NMSA 1978, § 41-4-5. *See Smith v. Village of Ruidoso*, 128 N.M. 470, 477, 994 P.2d 50, 57 (Ct. App. 1999). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' state constitutional claim, but not on the automobile negligence claims

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Strike Expert and Expert's Affidavit (Doc. 47), filed June 6, 2003, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 25), filed on April 22, 2003, is **DENIED** as to the federal due process claims and state law automobile

negligence claims, and **GRANTED** as to the federal equal protection and state constitutional claims.

>	_____
>	**ROBERT C. BRACK**
>	**UNITED STATES DISTRICT JUDGE**